FILED

FEE PAID

2022 MAR 24  PM 1:14

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: EEE

1 Ahmad Alkayali *in Pro Per*
2 Terri L. Stiles *in Pro Per*
  15045 Adams Road
3 P.O. Box 1237
4 Pauma Valley, CA 92061
  Phone: (949) 813-2306
5 Email: Alkayalilegal@gmail.com

6
  *for Plaintiffs*
7 *Ahmad Alkayali and Terri L. Alkayali*

8

9

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

TERRI L. STILES, an individual, and
AHMAD ALKAYALI, an individual;

    Plaintiff,

vs.

JOHN CLIFFORD, an individual;
STEVEN SMITH, an individual;
DAVID R. CHAFFEE, an individual;
FATMA BOUKHARI, an individual;
SARAH QUADRI, an individual,
DARREN RUDE, an individual, and
DOES 1 through 10.

    Defendant.

CASE NO:  8:22-CV-00469-RSWL-DFM

**COMPLAINT FOR:**

**1. VIOLATION OF CIVIL RIGHTS (42 U.S.C. SECTION 1983)**

ORIGINAL

COMPLAINT

Plaintiffs Ahmad Alkayali and Terri L. Stiles (collectively, "Plaintiffs"), by and through their undersigned attorneys, submits this Complaint against Defendants David R. Chaffee, an individual; Fatma Boukhari, an individual; Darren Rude, an individual, and Neocell Corporation, a California Corporation, (collectively, "Defendants") and in support thereof, avers as follows:

## INTRODUCTION

1. This case arises out of a conspiracy to defraud the Plaintiffs and the numerous acts of fraud planned, implemented, and carried out in furtherance of this conspiracy by each of the named Defendants under color of law by and through state officials. Knowledge of these facts arose in another matter brought by Plaintiff Ahmad Alkayali in Riverside County Superior Court in 2013 (The "Healthwise Action") where a jury found two parties named herein (Boukhari and Quadri) liable for malicious, willful, and fraudulent conduct. (The "2015 Verdict") The Judgment stemming from the 2015 Verdict was affirmed in all respects by the Court of Appeal in 2019. *Alkayali v. Boukhari* (Apr. 5, 2019, No. E066230) 2019 WL 1499478.

2. The Healthwise Action was part of a broader dispute regarding Plaintiffs ownership of a collagen brand called Neocell. Through a series of events described herein, Defendants conspired, under color of law, to deprive Plaintiffs of their property in violation of 28 USC § 1983.

## PARTIES

3. Plaintiff Ahmad Alkayali is an individual residing in San Diego County, California.

4. Plaintiff Terri Stiles is an individual residing in San Diego County, California. Terri Stiles is Plaintiff Ahmad Alkayali's wife, whose civil rights were similarly violated through the concerted action of Defendants.

5. Defendant John Clifford ("Clifford") is an individual residing in Orange County, California.

COMPLAINT

1

6.  Defendant Steven Smith ("Smith") is an individual residing in Orange County, California.

7.  Defendant David R. Chaffee ("Chaffee"), who, on information and belief, is an individual residing in Orange County, California. Chafee was formerly a Judge with the Superior Court of California, County of Orange, who presided over the case of *Akram Quadri, et al. v. Ahmad Alkayali, et al.* (Superior Court of California, County of Orange, Case No.: 30-2008-00113872-CU-FR-CJC).

8.  Defendant Fatma Boukhari ("Boukhari") is an individual who resides, on information and belief, in the State of Georgia.

9.  Defendant Sarah Quadri ("Ms. Quadri") is an individual who resides, on information and belief, in the State of Georgia.

10. Defendant Darren Rude is an individual who resides, on information and belief, in Orange County, California.

11. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as Does 1-10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' injuries as herein alleged were proximately caused by the aforementioned defendants.

## JURISDICTION AND VENUE

12. Subject matter jurisdiction and venue are proper in this county because certain events material to the allegations at issue occurred in this county, and at least two of the named Defendants reside in this county.

COMPLAINT

2

## FACTS COMMON TO ALL CAUSES OF ACTION

13. The underlying case was instituted by Defendants Clifford, Smith, Boukhari and Quadri (along with her now deceased father, Akram Quadri) as an attempt to have the Alkayalis removed as owners of Neocell, a collagen supplement company that had seen a meteoric rise the year prior. By the time the misconduct detailed herein was done, defendants Clifford (an attorney), Boukhari, Rude, and Quadri, ended up with ownership of a collagen supplement company worth $100 million dollars, as well as the benefit of Mr. Alkayali's business relationships and inventions – taken from Plaintiffs and divided between Defendants.

14. From the outset, the only person that stood in their way from an early ownership stake in one of the most lucrative supplement trends in the last ten years (collagen supplements) were the inventors of the products and owners of the business at that time, Plaintiffs. Given the life changing amount of money at stake, Defendants did the unthinkable – creating and executing a sinister plan where they would act as state agents in order to deprive Plaintiffs of their civil rights.

15. The process was initiated without warning – with a lawsuit and TRO application alleging falsely that Mr. Alkayali was not an owner of Neocell, but only a consultant of the company, alleging that he was fired for reasons unknown, and that he must leave the premises of his own business and never come back.

16. As found by the Court of Appeal in the Healthwise matter, "[o]n October 8, 2008, attorneys for NeoCell confronted Alkayali at the offices of NeoCell and Healthwise. The attorneys came into Alkayali's office uninvited and told him he was fired and demanded he immediately collect his personal belongings and leave the premises." *Alkayali v. Boukhari* (Apr. 5, 2019, No. E066230) 2019 WL 1499478 at *11.

17. It is undisputed then, that Clifford and Smith, who are attorneys, took the extraordinary measure of personally serving an application for a temporary

COMPLAINT

3

restraining order directly to Mr. Alkayali at his office at the Neocell property. Under color of law, Clifford and Smith, without the permission of Mr. Alkayali, trespassed onto Neocell's premises and insisted to Mr. Alkayali that he was mandated to leave the premises by virtue of the motion papers they held in their hands. Clifford and Smith misrepresented the authority they had to demand that Mr. Alkayali leave the premises – in fact they had none.

18. In reality, Clifford and Smith conspired with Quadri, Rude and Boukhari to orchestrate this charade, with the aim of forcing Mr. Alkayali off of his property under color of law so that they could deprive him of his civil rights by limiting his ability to access his own documents (which were stored at the Neocell premises and subsequently destroyed before they could see the light of day), witnesses (who were subsequently prohibited from testifying on behalf of Mr. Alkayali under color of law), and through a truncated sham trial coordinated with a sitting judge, complete with an sham jury who was eventually ignored in favor of defendants.

19. Testimony that came to light in the Healthwise trial revealed Alkayali's 72% ownership interest in Neocell was undisputed until the day Clifford and Smith physically appeared at Neocell's office to remove Mr. Alkayali from the premises under color of state law.

20. In reality, Clifford and Smith, who were attorneys, did not have authority by any state statute to forcibly remove Mr. Alkayali from his place of business. Clifford and Smith lied, and misled Alkayali into believing they were acting with the authority of a court order, which was false. Clifford and Smith did this because they knew they could destroy evidence once Mr. Alkayali was no longer present.

COMPLAINT

4

21. In this regard, employees of Neocell testified in the Healthwise trial (years later), that Clifford, Smith, and Akram Quadri removed the Neocell books and records from Ahmad's office as soon as Mr. Alkayali left the premises.

22. Other employees present eventually testified (during the Healthwise case), that they were under the impression that Clifford and Smith were acting under color of state law, including Anne Marie Montgomery and Jorge Hodgers, who never was allowed to testify at all during the Neocell proceedings.

23. As noted above, the next step in Defendants' scheme was to exclude Mr. Alkayali from his own business so that he could never collect evidence in his favor (or realize it was destroyed) or speak to his employees. This part of the scheme, again, was predicated on Clifford and Smith – two attorneys – trespassing onto the Neocell premises under color of law in order to remove Mr. Alkayali from the presmies. After they had excluded Mr. Alkayali falsely, under color of law, Clifford and Smith then moved to enjoin Mr. Alkayali from ever returning to his business through the Court system.

24. Clifford and Smith were successful in obtaining a temporary restraining order only because they trespassed and falsely stated that Mr. Alkayali must leave his own premises. Clifford and Smith orchestrated this unprecedented charade with their co-conspirators, Quadri, Rude, and Boukhari (and the now-deceased Akram Quadri) all with this sole purpose in mind.

25. Defendants knew that without the ability to collect evidence to support his defense, without the ability to make contact with any witnesses who could testify on his behalf, and without sufficient time to even obtain counsel to learn the facts of the case, Mr. Alkayali would be doomed.

26. Based solely on their misconduct, under color of state law, in removing Mr. Alkayali from his office and access to his files, Defendants were able to obtain

COMPLAINT

5

an order depriving Alkayali of his property and from contacting any witnesses in support of his cause. The injunction prohibited Alkayali from:

 a. Trespassing on Plaintiff NeoCell's land or property and entering NeoCell's offices located at 1911 and 1915 South Susan, Santa Ana, California;

 b. Contacting (by telephone, mail, email, in person or otherwise) anyone at NeoCell offices, or any NeoCell's employees, customers, vendors, or affiliates without the express written consent of NeoCell;

 c. Coming within 500 feet of NeoCell's offices; and

 d. Removing, transferring, otherwise disposing of, concealing, or encumbering and of NeoCell's property, books or records.

27. Defendant Chafee was the presiding judge for this proceeding, and the subsequent trial, which he set for February 23, 2009 (less than three months after enjoining Mr. Alkayali). Defendant Chafee is being named as a nominal defendant and Plaintiffs are seeking only equitable relief from Mr. Chaffee regarding actions done in his judicial capacity. *Pulliam v. Allen*, 466 U.S. 522 (1984)(judges not absolutely immune from equitable relief regarding their judicial acts). Plaintiffs only seek damages from Mr. Chafee only to the extent the Court finds that certain actions of Mr. Chafee were not done in a judicial capacity, consistent with Supreme Court precedent on these circumstances.

28. Given the short time frame provided by Defendant Chafee, Mr. Alkayali was not allowed to conduct discovery or depose any witnesses. Additionally, Judge Chafee, in various proceedings held in chambers, withheld from the record certain financial documents that demonstrated Mr. Alkayali's ownership, including the tax returns of the parties, which would have clearly established, and been the best evidence of, company ownership.

29. Other indicia of Chafee's involvement in the scheme checker the underlying record and will be further described during these proceedings, including

COMPLAINT

6

Mr. Chafee inexplicably excusing witnesses from testifying at trial, including a party to the proceedings, Fatma Boukhari, who would undeniably be viewed as a weak witness for the Defendants.

30. Additionally, at trial, Mr. Alkayali was not allowed to call any of his employees as witnesses. As came to light in testimony in the Healthwise case years later, Darren Rude, then Vice-President of Neocell, testified that Mr. Alkayali was the 72% owner of Neocell on multiple occasions during his deposition in the 2015 Healthwise case. Mr. Rude testified that despite knowing about the trial, and knowing that Mr. Alkayali was the real owner of Neocell, he did not testify. Mr. Alkayali's departure was in Mr. Rude's interests since Mr. Rude was promised equity in the company, as well as exclusive control over Neocell's top customer, Costco, if he played ball with the scheme hatched by the other co-conspirators.

31. Despite the clear presence of a factual issue as to the ownership of Neocell and a properly filed jury demand, Defendant Chaffee ordered that Mr. Alkayali would not have a right to a jury decide the disposition of his life's work, and all of his assets.

32. Instead, an "advisory" jury was empaneled who, despite the missing evidence and testimony, still ruled for Mr. Alkayali. Perhaps surprised that the Court could not rely on the jury to come up with the desired result, then-Judge Chaffee simply ignored the jury's verdict in favor of Mr. Alkayali, and in doing so, made no reference at all to the tax returns the Court saw *in camera*, the absence of other documents and witnesses, the truncated proceedings. In fact, Chafee took the extraordinary measure of having the Quadri's attorneys (Defendants Clifford and Smith) draft the Court's order disposing of Mr. Alkayali's life's work. By delegating judicial tasks to adversaries of a litigant, and adopting their work as his

COMPLAINT

7

1 own (and that of the state) Mr. Chafee deprived Mr. Alkayali of due process of law which demands that a judicial officer remain impartial.

33. The stated basis for the Court's decision was deposition testimony from Mr. Alkayali taken from a different case dating back several years ago (notably, from a case prosecuted by Smith and Clifford), and made no reference to the any of the above facts.

## CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF
## (Violation of Civil Rights 42 U.S.C. § 1983)
### Against All Defendants

34. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

35. Defendants Clifford and Smith deprived the plaintiff of his right to due process of law by forcibly removing Alkayali from the Neocell premises. Clifford and Smith acted as agents of the state with authority to remove Mr. Alkayali from the premises, but they they had no authority (as attorneys) to become involved in a physical confrontation with an opposing litigant. The execution of court orders is traditionally and exclusively the prerogative of the state, and for this reason, among others, Clifford and Smith are state actors for purposes of § 1983.

36. The scheme was concocted as part of a conspiracy to deprive Mr. Alkayali of due process at the behest of co-defendants Quadri, Boukhari and Rude, such that there is such a close nexus between the state and the challenged action such that the above scheme may be fairly treated as that of the state itself. Additionally, Quadri, Boukhari, Rude, Clifford and Smith are state actors for purposes of § 1983 for their removal of Mr. Alkayali without providing proper notice and a prior judicial hearing. *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983)

COMPLAINT

8

37. Quadri, Boukhari, Rude, Clifford and Smith also violated Alkayli's constitutional rights by way of their deliberate acts to destroy evidence once Alkayali left the Neocell premises, and their failure to inform witnesses of subpoenas issued for trial.

38. The scheme was advanced by Defendant Chaffee, then a member of the state judiciary, who acted in concert with the remaining defendants to deprive Mr. Alkayali of due process of law. This was accomplished by enjoining Alkayali from access to his records, enjoining Alkayali from contacting his employees, excluding witnesses from the proceedings, and ordering opposing counsel to draft the government's statement of decision for the state, which the Court adopted without any changes at all.

39. Chafee's deferring to Clifford and Smith the role of drafting a court order if nothing else makes it so that the conduct of Clifford and Smith is inextricably intertwined with the actions of the government and for this purpose is a violation of Plaintiffs constitutional rights.

40. The aforementioned conduct of Defendants was the actual and proximate cause of Plaintiff's divestiture of his 72% interest in Neocell, which was sold for approximately $100 million in 2018, valuing Plaintiffs actual damages at $72 million, exclusive of the monetary value of the other rights, access to business relationships, and inventions Defendants divided among themselves after the deed was done.

41. Defendants' conduct was at minimum reckless and callously indifferent to the federally protected rights of Plaintiffs. Additionally, Defendants conduct was motivated by an evil intent. As such, Plaintiffs are entitled to an award of punitive damages.

COMPLAINT

9

# PRAYER

Wherefore, Plaintiff prays for judgment against Defendant as follows:

1. Actual damages;
2. Punitive damages;
3. Emotional distress damages, including damage to reputation, and pain & suffering resulting from Defendants misconduct;
4. Attorneys fees;
5. A declaration that Defendant Chafee acted in violation of Plaintiffs civil rights;
6. Costs of suit;
7. Any other relief the Court may deem appropriate.

Dated: March 22, 2022

By: /s/ Ahmad Alkayali
Ahmad Alkayali *in Pro Per*
for Plaintiffs
Ahmad Alkayali and Terri L. Alkayali

COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: March 22, 2022

By: /s/ Ahmad Alkayali
Ahmad Alkayali *in Pro Per*
for Plaintiffs
Ahmad Alkayali and Terri L. Alkayali

COMPLAINT
11